EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COPY

| | |
|---|---|
| USA | CRIMINAL ACTION NO. 05-0050 |
| VS. | SEPTEMBER 1, 2005 |
| ROBERT RYAN | PROVIDENCE, RI |

HEARD BEFORE THE HONORABLE WILLIAM E. SMITH
DISTRICT JUDGE
(DEFENDANT'S MOTION TO WITHDRAW)

APPEARANCES:

FOR THE GOVERNMENT: ANDREW REICH, ESQ.
U.S. Attorney's Office
50 Kennedy Plaza
Providence, RI 02903

FOR THE DEFENDANT: EDWARD C. ROY, ESQ.
Federal Defenders Office
10 Weybosset St.
Providence, RI 02903

Court Reporter: Anne M. Clayton, RPR
One Exchange Terrace
Providence, RI 02903

Proceeding reported and produced by computer-aided stenography

THE COURT: Good afternoon. This is the matter of the United States versus Robert Ryan.

Would counsel identify themselves for the record, please.

MR. REICH: Andrew Reich on behalf of the United States of America.

MR. ROY: Good afternoon, your Honor. Edward C. Roy for the defendant.

THE COURT: All right. Thank you. We're here this afternoon on Mr. Roy's motion to withdraw as counsel for Mr. Ryan, the defendant.

This matter is scheduled for a change of plea hearing, I believe, in a week from today or so.

MR. ROY: He's already pled guilty, your Honor. It's for sentencing.

THE COURT: For sentencing. I'm sorry. I misspoke. It's been a long day.

So I understand now, leading up to sentencing, there's a problem that has occurred, and I'll hear from you if you'd like to explain what is the issue.

MR. ROY: Yes, your Honor. Your Honor, as the Court is aware, I don't come into court often to try and withdraw my appearance in cases. I

appear in this court on a fairly frequent basis.

We reached kind on an intractable dispute with Mr. Kelly (sic). The problem arises from his guideline calculation. He is a career offender, and the low end of his guidelines is, as per the -- low end of the advisory guidelines is 151 months.

Before he pled guilty after he had signed the plea agreement, I told him that I thought he was probably a career offender. I hadn't told him that up to that point because I hadn't looked at his criminal history. But in any event, there was a meeting, his presentence report meeting where he was asking the probation officer concerning his sentence, what am I looking at, my criminal history. And I mentioned I think he's a career offender to the probation officer. And Mr. Kelly in his own mind attributes that comment by me --

THE COURT: You keep saying Mr. Kelly. Mr. Ryan.

MR. ROY: Mr. Ryan. I'm sorry. Mr. Ryan attributes that comment that I caused the probation officer to declare him to be a career offender. And I explained to him that that probation officer is an attorney, knew his job

while he was working in that office well. And that no comment I made would certainly -- he would have caught the convictions anyway. And he seems to want to blame me for the fact that the advisory guidelines range is a low end of 151 months. And we've had, over the last probably month-and-a-half, an increasingly tense relationship concerning that.

And I feel that he doesn't -- he wants to blame me, and that's all well and good. But like I told him, the law says that if you have two prior violent felonies, you're a career offender. It's not my choice. I don't agree with it, but it's the law. It's only an advisory range. The Court is free to provide a lower sentence should the Court see fit.

And we've reached that point where I think it's very difficult to -- he doesn't trust me. He doesn't want to have me represent him, has asked for another attorney.

I had Mr. Fitzgerald interview him, and, initially, it appeared they were able to get along. And Mr. Fitzgerald advised me last week that Mr. Ryan had asked for another law office that wants to represent him.

Parenthetically, I note for the Court in an attempt to try and develop some mitigating material for Mr. Ryan, I had my investigator track down two people that he had mentioned to me that he had worked with, who had done some work in the City of Providence advising -- speaking to youths about the dangers of drug abuse. And we did track down one person, and my investigator was able to take a lengthy statement from that person, and Mr. Ryan is aware of that.

So we did try to -- and we did do a lot of work to try and find some mitigating circumstances to present to the Court. But given the fact that he faces 151 months, your Honor, and he wants to, like I said, blame me for that fact, I think I'm sort of at a loss as to what to do. I know it's not my fault, but he believes it is. You know, perhaps the best thing is to have another lawyer come in from the panel, CJA panel, have that person represent Mr. Ryan. And if he wants to withdraw his plea or whatever, then so be it.

I'm sort of at a very, very difficult stage. I'm not sure what more I can do to help this defendant, your Honor.

THE COURT: Okay. Thank you. Mr. Ryan,

sometimes it's helpful if you hear from the Court something about how the process works. I mean, you, understandably, you know necessarily how all the processes work around here as a way of sort of the business gets done. And things may seem unusual to you, but because the people involved are here all the time, they're the usual thing.

When the Office of Probation does its presentence investigation, it reviews all records, all criminal history records, and then they make a determination as to how those records fit under the guidelines, and they lay all that out in their presentence report.

The public defenders, Mr. Roy and Mr. Fitzgerald, they work with these folks at Probation all the time. And it would be more than pointless for them to say to Probation, you know, I think he's a this, or I think he's a that, because Probation goes out and does the work themselves. They work for the Court, the probation officers. They don't work for the Government, the prosecutors. They don't work for the defendant. They work for the Court. And they have an absolute obligation to go out and dig deep and get all the information available.

So while Mr. Roy may have said something that appeared to you to be giving something away by saying that it looked like the record was -- you had two violent felonies, a career offender, that would have absolutely no impact on Probation one way or the other.

I mean, even if Mr. Roy was wrong and Probation looked at it a different way, they wouldn't hold his statement against you. They'd call it the way they saw it. And by the same token, if they saw it there, and Mr. Roy said, "This guy is not a career offender," they wouldn't pay any attention to that either. They'd say, no, he is, because he's got two violent felonies. Whatever. I don't have the presentence report so I don't know what's in there, but they would just call it the way it is, because their job is to give the Court an objective report with all the information in it.

Now, then that report goes out to the Government and to you and to your counsel, and both parties have a chance to advocate at that point why they think things are incorrect in there, or they disagree with some of their conclusions about how they're reading the

guidelines, and then those objections come to the Court, and then we resolve all that at the sentencing hearing.

I'm telling you all this because if that's the source of the tension -- I'll give you a chance in a second, all right. If that's the source of the tension, I can just tell you from the point of view of the Court, that it's not significant, and it had no effect.

Now, obviously, you say it's something else, and I'll hear from you. I want to say one thing to you.

THE DEFENDANT: I'm not trying --

THE COURT: I want to say one thing to you before you speak. Okay? It's important that you are represented by counsel. And if you're going to say something that your lawyer believes may not be helpful to you, he's going to stand up and say something or stop you. Okay?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Now, go ahead. What is it?

THE DEFENDANT: Your Honor, first of all, let me start by saying I'm not trying to inconvenience the Court at all. I'm just looking

out for my behalf., And I feel that Mr. Roy doesn't have my best interest in heart. That is part of the argument was that he did bring up that I was a career criminal in front of the probation officer. And I brung it to his attention at the next meeting, and he denied saying it. And then after that, he denied even being there. And this was confusing me, because I knew he was there at the report when they did the report. He out and out said he wasn't there, and he didn't say it.

So the first thing I did when I came in the courtroom is that I asked him so I wasn't -- so I thought I was going crazy, because I knew he was there, and he's telling me emphatically he wasn't there when they did the report.

So when I came into the court, which I'm glad the marshals were there, I asked him, "Do you remember what that argument was about?" He says, "Yes." I said, "What was it about?" He said about my sentence. I says, "Yeah, and what else?" He said that you were there -- he was present at my probation report. And he says, "Yeah, I was wrong."

So that was one of the things that started it, saying that he wasn't there at my probation

report, which I knew he was there, and I'm thinking that why would he say that, you know, why would he say he wasn't there and deny that when he did say that? That's number one.

From the beginning, Mr. Roy -- I told Mr. Roy from the beginning if there was any situation they had in the agreement -- he said you're going to be looking at from four to six years with your record, I went over your record, this is what he told me, and he said to trust him. I says, well, if they're going to give me any more time, I don't want to sign any of my rights away.

You know, which I have a right. I don't want to sign any rights away. If they're going to be giving me more time, then -- I know I was wrong. I admitted I was wrong. He said I'm looking at four to six with my record. So he said just to trust him on that, and I did. So I signed all my rights away.

Then when they were doing the probation report, he mentions -- we were having a conversation, and he mentioned that I was a career criminal in front of the probation, which I found inappropriate. You know, if he wasn't bringing it up, why would my lawyer bring it up? And then

when I brought it to his attention, the conversation that he denied it, this and that, and I felt he doesn't have my best interest in heart, to be honest with you.

THE COURT: Okay. Well --

THE DEFENDANT: I'm not trying to inconvenience the Court at all, your Honor. You know, I'm not in a good situation. My credibility is shot up.

THE COURT: Here's the thing. I understand. I mean, people can have misunderstandings. They can make mistakes.

Now, you know, Mr. Roy is a very busy attorney. He's got a lot of cases. He's here all the time. And it may be that, you know, he made a mistake, that he didn't recall something, that he got it wrong. Sounds like you got that sort of straightened out. But more important than that is what you have said about relying on what he told you about the sentence four to six years and then signing your rights away.

When you pled guilty, I asked you a whole bunch of questions.

THE DEFENDANT: Right, your Honor, I remember that specifically.

THE COURT: And one of the questions I emphasized to you, because I do it to every defendant, is I say that you understand that any estimates anyone has given you about how the guidelines apply are just estimates, and that we won't know that until after the Probation Office prepares their presentence report.

THE DEFENDANT: Your Honor, excuse me. I understand that. And I remember you telling me that, and I brought up that I wasn't promised anything. I did put it, it's in record, that I was under the assumption that if I signed, you know, if I go along, I pled guilty, this, that, the Court would take into consideration that I did go along with the process and I'm not trying to -- you know, I'm going along with the program that, you know, 63 months is the agreement. It's up to your discretion. I understand that. And I brought that up, and I wasn't promised anything. I wasn't. You know, but I was under the assumption, though, your Honor.

THE COURT: All right. I'm telling you that because, even if you got another lawyer and you came in here and tried to withdraw your plea, that would be a very hard thing to do. I won't

prejudge anything.

THE DEFENDANT: I know that, your Honor.

THE COURT: But that is something that courts just don't do, and I cover all that -- that's why I take such pains in the plea hearing to go over all this stuff.

So that's very unlikely that that would happen, that you'd be given the opportunity to change your plea.

The other thing is, you know, we provide the public defenders here. They're paid by the Government to handle these cases where folks cannot afford their own counsel.

Now, if I appoint another lawyer to represent you, then we have to expend additional funds for that. Those lawyers get paid. I mean, they don't work for free.

But we have a panel of attorneys who handle things when the public defenders can't handle them. For example, if it's --

THE DEFENDANT: Your Honor, I just want to be treated fairly. That's all, your Honor. Do you know what I'm trying to say? I'm really not looking for -- I just want to be considered just like anybody else, your Honor. I don't -- I

strongly believe that I'm not a career criminal. I know that I've done some stupid things in the past, and it was over drugs. And most of my points were driving on a suspended license. Past 10 or 15 years, not that I kept good peace or good behavior, I've done some stupid things, your Honor. But I know I can't compare myself to other cases, but I know in my heart, and a lot of people know it, I don't deserve that kind of time. I don't. And I just feel that he doesn't have my best interest, and he's not going to fight for me because we had a couple of arguments. Do you understand what I'm trying to say?

THE COURT: I do. But I want you to --

THE DEFENDANT: And I don't want to cause the Court no problems. And I don't want you to take offense and say, well, if he wants -- excuse me. You know, I'm in a Catch-22, your Honor.

THE COURT: But I want you to understand that it's -- we have to be very careful about letting defendants change horses during the proceedings.

THE DEFENDANT: Your Honor, I heard that you're a fair judge, and I want you to hear my case. I believe that you would do the fair thing

with me.

THE COURT: Not changing judges. Changing attorneys.

THE DEFENDANT: I know that. I know that. I understand that. I just -- you know, there's some objections that I need to be -- your Honor, it's up to you, your Honor. I made my case. I don't want to cause no problems, your Honor. That's all I have to say.

THE COURT: I made a suggestion that perhaps if you felt there were some issues that you couldn't get by with Mr. Roy, that Mr. Fitzgerald, he's also here all the time and certainly is a vigorous advocate. He spent a whole day advocating a case in front of me, and he's very vigorous. Doesn't always prevail, but he's very vigorous.

THE DEFENDANT: I'm sure he is, your Honor. I just wish I could articulate myself a little bit better because --

THE COURT: You're doing just fine. But why not, if you feel there's a personal --

THE DEFENDANT: Your Honor, it's up to you, your Honor. If you want Mr. Fitzgerald to represent me, I'll have to go along with it. I

can't -- you know, I just gave you the best I could, your Honor, what I believe in. And your judgment is -- that's what I have to abide by, you know.

THE COURT: Do you have any problem with Mr. Fitzgerald?

THE DEFENDANT: No, I don't. I don't have nothing. Just that like the only thing I had a problem with him is that he's going to be working with Mr. Roy. I think Mr. Roy has a personal problem with me. That's what I believe. I don't know why. I just believe why would he lie to me like that. It just made me confused like why would he deny him being there. I just found that really confusing. It made me believe that I had something wrong with me knowing that I knew he was there. Maybe he was busy. I don't know, your Honor. It's just that we had a big argument over it, and he just -- I just find it hard to believe that he couldn't remember something like that.

THE COURT: Okay. Well, sometimes when people have disagreements and they do affect their ability to work with each other, and I'm willing to give you some benefit of the doubt on that. But I think that the remedy for the problem is to

let Mr. Fitzgerald step in in the place of Mr. Roy. He's a very qualified, vigorous attorney. It will alleviate this personal issue that maybe has developed between you and Mr. Roy. I'm not saying that you're right about that, about the things that you may think of Mr. Roy. In fact, I think you're wrong, because I've known Mr. Roy for a long time, and I know his abilities, and I know his integrity, but sometimes things happen, and it just --

THE DEFENDANT: I understand.

THE COURT: -- breaks down.

THE DEFENDANT: Before that, your Honor, I didn't have a problem with Mr. Roy.

THE COURT: So I don't want to imply that I think you're correct, but I do want to give you the benefit of the doubt, and I think Mr. Fitzgerald could step in and take this thing on.

Mr. Fitzgerald, are you prepared to do that?

MR. FITZGERALD: Your Honor, I can do that. The reason that I referred this case back to the Court for the motion to withdraw was exactly what Mr. Ryan just said, that he had

concerns because Mr. Roy and I work together; both in the Federal Defender -- essentially, a partnership.

Your Honor, if that's okay with Mr. Ryan, and he doesn't believe that that's going to be a conflict from here on out, then that's fine. I can certainly step in and talk to him and handle the sentencing from here on out.

The only thing I'm going to ask for is a little bit more time to get it straight.

On the other hand, your Honor, you know, it's not normal that Mr. Roy and I would trade clients like this in this type of situation, but I think we can do it in Mr. Ryan's case, because we are close to sentencing, and we have done significant work with Mr. Fortier on Mr. Ryan's case. So I have no problem taking it.

THE COURT: I think it's appropriate. And it's certainly a better alternative than having Mr. Ryan represent himself.

And I've got to tell you, Mr. Ryan, from a policy point of view -- you can remain seated. From a policy point of view, I am extremely reluctant to let people move from the Public Defender's Office to a private attorney unless

there is really a situation like a conflict of interest, a legal conflict of interest that prevents it, because what happens, and I'm not saying you're doing this, what happens is once defendants start seeing that you do that, they start making motions to switch attorneys constantly. And they -- some defendants do that because they want to delay things. They want to keep switching attorneys to cause delay. And some do it because they just don't like the message that they're hearing.

So we have in this Court a very strict policy about that. We just don't allow it unless there's a really, really good reason. But the nice thing about having two people in the Public Defenders Office is that occasionally when something like this happens, although this isn't very common, it's at least possible that the other public defender can step in and alleviate the personality issue that may have developed, and it doesn't cost more money. We have a limited amount of money to pay for outside attorneys, and it doesn't put me in a position of having to tell you that you either go with these guys, or go with Mr. Roy or go pro se. I don't have to do that.

So I think that's the best solution. I can assure you that Mr. Fitzgerald is an officer of the Court, and he has an absolute obligation, if he's representing you, he has an absolute obligation to represent your interests. And he is going to put that ahead of anything else, including anything you might think of as loyalty between these two co-workers. He has an obligation as an attorney to put your interest first. Okay? He will do that.

THE DEFENDANT: May I address one thing, your Honor.

THE COURT: Sure.

THE DEFENDANT: I asked Mr. Roy, I sent him a registered letter for my PSI, and I haven't received it yet. I asked Mr. Fitzgerald also about a month ago to send it, too, and I still haven't received my PSI. And I'd like to have that on record that I'd like to have it in my possession, please.

THE COURT: I'm sure they'll send it you. I don't have it either, frankly. Maybe it's upstairs. I don't see it in my file. Has it been issued?

MR. FITZGERALD: Yes, your Honor.

THE COURT: It probably just hasn't been put in the file yet.

MR. FITZGERALD: I will get it to Mr. Ryan.

THE COURT: All right. Then that's the way we're going to leave it. I'm going to have Mr. Fitzgerald represent you in this, and the request he's made for a little more time is agreeable.

So we'll reschedule the sentencing to give Mr. Fitzgerald a chance to get up to speed.

MR. FITZGERALD: Your Honor, if I could suggest, the sentencing is down for next Friday. So I'd ask for a month for the sentencing and two more weeks from tomorrow for the objections.

THE COURT: That's fine. Is that all right, Mr. Reich, from your point of view?

MR. REICH: Yes, your Honor.

THE COURT: I haven't asked you if you had anything you wanted to say, but I assume you don't.

MR. REICH: I don't. I have nothing to add, your Honor.

THE COURT: All right. Then approximately a month, what would that be?

All right. We'll say Friday, October 7th, at 11:30. And you can have two weeks to get any objections in to the presentence report.

MR. FITZGERALD: That would be the 16th, your Honor?

THE COURT: Yes.

MR. FITZGERALD: Thank you.

THE COURT: You'll enter your appearance on behalf of Mr. Ryan?

MR. FITZGERALD: I'll do that.

THE COURT: So I'm going to grant this motion of Mr. Roy to withdraw subject to your entering your appearance.

All right. Is there anything further?

MR. ROY: Nothing, your Honor.

MR. REICH: No, your Honor.

MR. FITZGERALD: No, your Honor.

THE COURT: All right. Thank you.

THE DEFENDANT: Thank you, your Honor.

(Court concluded at 4:00 p.m.)

# CERTIFICATION

I, Anne M. Clayton, RPR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

Anne M. Clayton

Anne M. Clayton, RPR

Jan. 3, 2006

Date