**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ROBERT RYAN** | : | |
| | : | |
| | : | |
| **v.** | : | **C.A. No:07-138S** |
| | : | |
| **UNITED STATES OF AMERICA** | : | |

**GOVERNMENT'S RESPONSE TO PETITION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

In his petition to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, Robert Ryan ("Ryan") raises a variety of claims arising from his assertion that he was constructively denied his Sixth Amendment right to effective assistance of counsel. These claims are uniformly without merit and at no time does Ryan fully demonstrate that his counsel was ineffective as defined by Strickland v. Washington, 466 U.S. 668 (1984).

**PROCEDURAL AND FACTUAL HISTORY**

On December 30, 2004, Ryan walked into a Sovereign Bank in Providence and presented a teller with a note stating that no one would get hurt if the teller gave him cash in certain specified denominations and if the cash did not include dye packs. The teller gave Ryan $2,030 in cash. Ryan then fled the scene in a white Buick. Later the same day, the police discovered the Buick parked near Ryan's apartment. The car was littered with red-dye-stained cash (the teller had included a dye pack after all), and when Ryan came to the door of the apartment his pants were covered with the same red dye. Ryan uttered an unprompted incriminating remark and then gave the police consent to search the apartment. The police found more red-dye-stained money in a toilet and in Ryan's pants. Behind the apartment, the police found the disguise that Ryan had worn during the

robbery as well as his demand note, among other items tying him to the crime. (PSR ¶ 9; 5/23 Tr. at 14-17.)

On April 21, 2005, the Government filed an Information and Plea Agreement. The Information charged Ryan with bank robbery in violation of the 18 U.S.C. § 2113(a). On April 28, 2005, Ryan made his initial appearance, waived presentation of this matter to the grand jury, and entered a plea of not guilty. A written plea agreement was drafted, which Ryan signed. The written plea agreement warned Ryan that: (a) he faced a maximum sentence of 20 years in prison, (b) he would waive his right to a direct appeal if he received a sentence of 63 months or less, (c) the court alone made all sentencing decisions, (d) the court was "free to impose any sentence it deems appropriate up to and including the statutory maximum," and (e) "even if the Court's guideline determination and sentence are different than he expects, Ryan will not be allowed to withdraw his plea of guilty." (Defense Addendum at 3, 5-6.) During the plea hearing itself, the Court cautioned Ryan that: (a) he faced a maximum sentence of 20 years in prison; (b) it would not know how the advisory guidelines applied to his case until the Probation Office prepared a presentence report; and (c) "any estimates that you've been given about how the guidelines apply to your case, either [by] your attorney, or by the Government, or by anybody else are just estimates . . . [and] [t]hey're not binding on anyone, and it's not until I get that report and I make my findings that I know how the guidelines apply." (5/23 Tr. at 8-10.) Ryan said he understood. (5/23 Tr. at 8-10.)

On May 23, 2005, in accordance with the terms of the plea agreement, Ryan entered a plea of guilty to the charge in the Information that he had robbed a federally-insured bank in violation of 18 U.S.C. § 2113(a). The Presentence Investigation Report

("PSR") determined that Ryan fulfilled the Career Offender Provisions and, thus, his sentence was based on his status as a Career Offender.

On July 14, 2005, the Probation Office issued a PSR which determined that Ryan was a Career Offender based on two prior drug distribution convictions. (PSR at ¶¶ 23, 51, 52.) Ryan's 20 criminal history points placed him in Criminal History Category ("CHC") VI, but that category applied in any event in light of the Career Offender designation. (PSR at ¶ 60.) The advisory guideline range was 151-188 months, and the statutory maximum was 20 years. (PSR at ¶¶ 74, 75.) The PSR noted that Ryan might deserve an upward departure due to his extensive criminal record and the fact that his CHC did not "reflect 12 prior convictions that could not be counted due to the age of those offenses." (PSR at ¶ 92.)

After the PSR was issued, Ryan asked the Court to appoint him a new attorney based primarily on his allegation that his current attorney, Attorney Ed Roy, had inappropriately pointed out his Career Offender status to the Probation Office during a presentence interview. (9/1 Tr. at 3-11, 16.) At a September 1, 2005, hearing concerning the matter, Ryan also made comments to the effect that his attorney had incorrectly estimated his likely sentence. (9/1 Tr. at 10.) In response, Attorney Roy stated that he had in fact informed Ryan prior to his guilty plea that he was likely to be treated as a Career Offender. (9/1 Tr. at 3.) After inquiring about this sub-issue, the Court told Ryan that if he was thinking of filing a motion to withdraw his guilty plea, he should be aware that this was a difficult thing to do but that he would not "prejudge" the matter. (9/1 Tr. at 12-13.) Although the Court ultimately appointed Ryan a new attorney at the close of the hearing, Attorney Kevin Fitzgerald, Ryan never moved to withdraw his plea.

Ryan's new counsel did not object to the PSR. Attorney Fitzgerald did, however, file a sentencing memorandum outlining why the Court should exercise its post-Booker discretion to impose a sentence below 151 months. (Defense Addendum at 20-24.) One of the points counsel stressed was that due to Ryan's advanced age (he was then 46), he was less likely to recidivate after release from prison. (Defense Addendum at 21-23.)

Defense counsel pressed the same argument at the sentencing hearing, citing statistical data indicating that older offenders are less likely to recidivate. Counsel also emphasized Ryan's drug addiction. (10/7 Tr. at 5-9.) The Court took these factors into account but was unimpressed. (10/7 Tr. at 9-10, 19-23.) After setting forth its supporting reasons in detail, the Court imposed a 151-month sentence, which was at the low end of the advisory guidelines range. (10/7 Tr. at 19-23.) The judgment was entered on October 7, 2005. In addition to the sentence of 151 months a special assessment fee of $100.00 and restitution in the amount of $2,030.00 was imposed. (Judgment at 5.)

Ryan appealed to the First Circuit, which affirmed his conviction and sentence on May 15, 2006. A third attorney, Attorney Edward Juel, represented him on appeal. The First Circuit's mandate was issued on June 6, 2006.

## ARGUMENT

Ryan contends that he is entitled to Section 2255 relief because: (1) the guilty plea was unknowing, involuntary, and unintelligent because of ineffective assistance of counsel, (2) Ryan was denied the right to effective assistance of counsel post guilty plea, and (3) Ryan was constructively denied the underlying right to counsel altogether.

Ryan is not entitled to relief. All of his claims are substantively meritless, as this Court and the First Circuit's prior analyses of previous, very similar arguments has demonstrated.

**I. Ryan's Guilty Plea Was Knowing, Voluntary, and Intelligent.**

Ryan claims that he would not have entered a guilty plea if he had been aware that he could receive a sentence greater than four to six years. He asserts that his counsel was ineffective for improperly advising him regarding the sentence he could face. However, as discussed in the court of appeal's decision, the Court thoroughly went over this issue with Ryan prior to the entrance of his plea. The Court asked Ryan if he understood that "any estimates that [he had] been given about how the guidelines apply to [his] case, either by [his] attorney, or by the Government, or by anybody else are just estimates," and he answered in the affirmative. (5/23 Tr. at 10.) The Court went on to ask Ryan if he understood that "the sentence could be higher or could be lower than what is provided for in the guidelines," and he again answered in the affirmative. (5/23 Tr. at 10-11.) He again claimed at the September 1, 2005 hearing on the motion to withdraw, "I wasn't promised anything. I wasn't." (9/1 Tr. at 12.)

This very issue was brought up on appeal, and the First Circuit stated that "[c]ontrary to appellant's argument, estimates or predictions do not render a guilty plea involuntary, unintelligent, or unknowing." (Appeal Judgment at 2.) See Knight v. United States, 611 F.2d 918, 922 (1st Cir. 1979); Domenica v. United States, 292 F.2d 483, 485 (1st Cir. 1961); see also United States v. Silva, 430 F.3d1096, 1099-1100 (7th Cir. 1991); United States v. Garcia, 909 F.2d 1346, 1348-9 (9th Cir. 1990); Stout v. United States, 508 F.2d 951, 953 (6th Cir. 1975). Ryan is, in his petition, making an argument regarding

the same issue as the argument he made on appeal and is presenting no new facts. As the Court of Appeals determined, the District Court itself confirmed that Ryan understood what his guilty plea entailed and that the entrance of that plea was knowing, voluntary, and intelligent. Ultimately, Ryan should fail in this motion for the same reason.

**II. Attorney Roy Provided Effective Assistance of Counsel.**

Ryan argues that his guilty plea should be set aside based on ineffective assistance of counsel. The standard that must be met in order for the Ryan to change his plea based on ineffective assistance of counsel is that (1) the counsel's assistance was not "within the range of competence demanded of attorneys in criminal cases" and that (2) a reasonable probability exists that the petitioner would not have plead guilty had his attorney been competent. Hill v. Lockhart, 474 U.S. 52, 58-59. Attorney Roy was well within the range of competence demanded of attorneys. There is a strong presumption that counsel's conduct was within the wide range of reasonable assistance. Strickland, 466 U.S. at 689; Singleton v. United States, 26 F.3d 233 (1st Cir. 1994); United States v. Moreno Morales, 815 F.2d 725, 752 (1st Cir. 1987). Ryan admitted before the District Court that he understood that the estimate that Attorney Roy had provided was just an estimate and that Attorney Roy's estimate was not based on the PSR, which was not yet available. Attorney Roy had no way of knowing exactly what the PSR would recommend. An attorney's judgment "need not necessarily be right so long as it is reasonable." United States v. McGill, 11 F.3d 223, 227 (1993). Further, Attorney Roy could not be expected to advise Ryan to withdraw his plea because there was no legal basis on which to do so. For Ryan now to suggest that Attorney Roy should have done so is unreasonable and unfounded.

Ryan further argues that a reasonable probability exists that he would not have plead guilty had his attorney been competent, but his actions have not demonstrated this assertion. Ryan has, at various times throughout his case, been represented by three different attorneys. He did not, at any time, file a motion to change his plea. If he would not have plead guilty had his attorney been competent, as he claims, reason serves to show that he would have changed his plea once he received new, competent counsel. A "reviewing court should not use the benefit of hindsight to second-guess tactical decisions made by an attorney unless the decisions are unreasonable." Perron v. Perrin, 742 F.2d 669, 673 (1st Cir. 1984). See also Strickland, 466 U.S. at 689. The decisions made by Attorney Roy were certainly not unreasonable.

Ryan argues that he was mistaken when he said that he was not promised anything, and that he was promised a lower sentence by Attorney Roy. This argument is completely unfounded and contradicts the record on numerous occasions. Ryan stated before the District Court that he had not been promised anything before making his plea. The District Court went on to clarify that he faced a maximum sentence of 20 years in prison, that it would not know how the advisory guidelines applied to his case until the Probation Office prepared a PSR, and that any estimates that had been given about how the Guidelines apply were just estimates and not binding. Ryan said that he understood. (5/23 Tr. at 10-11.) He went on to restate this understanding at the September 1, 2005, hearing on the Motion to Withdraw. (9/1 Tr. at 12.)

## III. Ryan Was Not Denied His Sixth Amendment Right to Effective Assistance of Counsel Post-Guilty Plea.

As previously discussed, in order to establish ineffective assistance of counsel, Ryan must satisfy the two prongs required by Strickland v. Washington, 446 U.S. 668 (1984). First, Ryan must demonstrate that counsel's performance was "outside the wide range of professionally competent assistance." Id. at 690. Subsequently, Ryan must demonstrate that the ineffective assistance prejudiced his defense. Id. at 690. Ryan alleges that Attorney Fitzgerald and Attorney Juel were ineffective – his claim lacks merit.

### A. Attorney Fitzgerald Provided Effective Assistance of Counsel.

Ryan alleges that Attorney Fitzgerald provided ineffective assistance of counsel because he did not motion to withdraw Ryan's guilty plea. Attorney Fitzgerald's act in allowing the guilty plea to stand was a strategic decision, and strategic decisions need not be right, as long as they are reasonable. McGill, 11 F.3d at 227. It is well within the realm of professional competence to for Attorney Fitzgerald to allow his client's guilty plea to stand, particularly knowing that a change of plea would be an extremely hard motion to successfully see through. At the May 23rd Change of Plea Hearing, the Court comprehensively discussed with Ryan what a guilty plea entailed and the probable consequences of making such a plea - - Ryan can not now claim it was made unknowingly or involuntarily. He stated numerous times that he understood the decision he was making, and the Court concluded that the "defendant is fully competent and capable of entering an informed plea, that the defendant is aware of the nature of the charge against him and the consequences of his plea, and that his plea of guilty is a

knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense." (5/23 Tr. 4-18.)

In order for Attorney Fitzgerald to be considered to have provided ineffective assistance of counsel, it must first be demonstrated that he acted in a way that was outside the wide range of what is considered professionally competent assistance. This where Ryan's claim fails. Attorney Fitzgerald, like Attorney Roy before him, could not be expected to advise Ryan to withdraw his plea because there was no legal basis on which to do so. Motions to withdraw guilty pleas before sentencing are granted only upon a showing of a fair and just reason. United States v. Isom, 83 F.3d 17, 19 (1st Cir. 1996). At the September 1, 2005, hearing on the Motion with Withdraw, the District Court discussed this very issue with Ryan and Attorney Fitzgerald. The Court told Ryan and Attorney Fitzgerald that although it would not prejudge anything, it would be very difficult to change his plea at that time. Ryan responded to indicate his understanding and moved the subject on to discuss the sentence he faced. (9/1 Tr. at 11-13.) Based upon dialogue between the Court and Ryan, the allowance for strategic decisions by counsel, and Ryan's clear understanding of the entrance of his plea, there is no grounds upon which he can conclude that Attorney Fitzgerald's assistance of counsel was ineffective.

**B. Attorney Fitzgerald Did Not Fail to Follow Through With His Duty to Require The Court to Specifically Address The Issue of Whether or Not a Conflict of Interest Existed Because He Was From the Same Public Defender's Office as the Previous Attorney.**

Ryan alleges that Attorney Fitzgerald failed to follow through with his duty to require that the Court address the issue of whether or not a conflict of interest existed because he was from the same Public Defender's Office as Attorney Roy. This allegation

is unfounded. The District Court thoroughly discussed with both Attorney Fitzgerald and with Ryan the issue of whether or not there was a conflict of interest if Attorney Fitzgerald took the case from Attorney Roy. Further, Attorney Fitzgerald was the one who brought the case to the Court's attention. Ultimately, the Court asked Ryan if he had a problem with Attorney Fitzgerald, and he answered that he did not, a fact that Ryan now ignores. (9/1 Tr. at 4-20.) Ryan alleges that the Court sidestepped the issue; this is untrue. The Court thoroughly discussed the issue with the parties involved and determined that there was not a conflict of interest. (9/1 Tr. at 4-20.) Attorney Fitzgerald fully and competently performed his duty by calling attention to the issue and presenting information as to why the issue needed the Court's attention. Ryan points out that he stated that he only had a problem with Attorney Fitzgerald working with Mr. Roy because he thought Mr. Roy had a personal problem with him. However, as Attorney Roy told the Court, Ryan's basis for this thought actually came from Attorney Roy fulfilling his duty of candor to the Court by mentioning to the Probation Officer, an officer of the court, that Ryan was likely a Career Offender. The Court took time to explain to Ryan that the Probation Officer makes his own assessment and is not swayed by what counsel does or does not say, but rather that counsel is obligated to provide all necessary information for a fair and truthful determination to be made.

Regardless of Ryan's unfounded belief that Attorney Roy had a personal problem with him, he specifically stated, when asked if he had a problem with being represented by Mr. Fitzgerald, "No, I don't." (9/1 Tr. at 16.) There is no reason that the Court should have interpreted this statement in any way other than the manner in which it did. Ryan clearly and unambiguously stated that he did not have a problem with being represented

by Attorney Fitzgerald. The Court was understandably satisfied by this statement, which came after some discussion and explanation, and thus Attorney Fitzgerald competently and fully complied with his duty to bring the Court's attention to the potential conflict of interest.

**C. Attorney Fitzgerald Had No Reason to Object to The District Court's Imposition of Restitution.**

Ryan claims that Attorney Fitzgerald should have objected to the imposition of restitution in the full amount that he stole since some of the money was recovered. Ryan ignores the fact that the money he stole also included a dye pack. (PSR at 2.) Several places in the PSR note that although money was retrieved, it was covered in red dye. ( … "Providence Police observed … bill covered in red dye." at 2; "… police located bills … with what appeared to be red dye on them." Id.). Thus, although some of the money Ryan stole was recovered, it was destroyed. There was no basis for Attorney Fitzgerald to object to the amount of restitution.

**D. Attorney Juel Had No Reason To Raise The Issue of Potential Conflict of Interest On Direct Appeal.**

Ryan is correct in stating the District Court was given notice of a potential conflict of interest. However, he fails to recognize that the issue was discussed and ruled upon by the Court, as discussed above. Ryan cites a string of cases that have held that district courts have failed in their duties because they failed to inquire as to the potential conflict of interest - - such is not the case here. The Court thoroughly inquired as to the reasoning for the belief of a potential conflict. The information that surfaced as a result of its inquiry was that there was a misunderstanding over whether or not Attorney Roy had attended a particular meeting and that Ryan took the matter quite personally and

adopted the belief that Attorney Roy was no longer looking out for his best interests. Ryan readily accepted Attorney Fitzgerald as his new counsel and stated that he did not have a problem being represented by him. Based on this inquiry, the District Court made a judgment that there was no conflict of interest. Attorney Juel had no basis and thus no reason to question that judgment. Therefore, it cannot be said that Attorney Juel provided ineffective assistance of counsel because he failed to again make an issue of the potential conflict of interest upon appeal.

**E. The District Court Did Not Commit Plain Error By Sentencing Ryan as a Career Offender and Therefore Attorneys Fitzgerald and Juel Had No Reason to Raise The Issue on Appeal.**

As discussed in the PSR, the sentencing guidelines designate an individual as a career offender if "(1) he was at least 18 years old at the time he/she committed the instant offense of conviction, (2) the instant offense of conviction is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." (PSR ¶ 23.) As the PSR correctly stated, "[i]n this case, the defendant was at least 18 years old at the time of the offense, the offense of Bank Robbery is defined as a crime of violence, and the defendant has the requisite prior convictions." (PSR ¶ 23.) Ryan claims that the PSR inaccurately states the crimes that fulfill the provisions for the Career Offender Status.

Ryan fails to mention, however, that he has committed other crimes that do count towards the Career Offender Provision. On September 13, 1991, Ryan was arrested and later convicted of 1 count of Larceny from a Person (P2/91-3456A). (PSR ¶ 46.) He was sentenced to 10 years full sentence, with 5 years to serve and 5 years suspended with

probation. On September 30, 1991, Ryan was arrested and later convicted of 1 count of breaking and entering with intent to commit larceny (P2/92-1936A). (PSR ¶ 47.) He was sentenced to 10 years full sentence, with 5 years to serve and 5 years suspended with probation. Section 4A1.2(e)(1) of the 2004 Sentencing Guidelines Manual states that "Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted."

The First Circuit Court has ruled on the implications of being convicted of a crime of larceny of the person, stating "Appellant claims that this conviction cannot trigger career offender status because the crime charged…does not constitute a crime of violence within the meaning of the sentencing guidelines. We do not agree." United States v. De Jesus, 984 F.2d 21, 23. The Court dismissed counterarguments to its holding, saying that,

> "[b]ecause actual or threatened use of force is not an element of the offense in Massachusetts, larceny from the person does not fit within subsection (i) of U.S.S.G. § 4B1.2(1).[1]…[E]ven if force (actual or threatened) is not an element of the offence, a crime may still be a crime of violence if it falls within the "otherwise" clause of subsection (ii), that is, if it 'involves conduct that presents a serious potential risk of physical injury to another.' U.S.S.G. § 4B1.2(1)." Id. at 23.

The Sentencing Guidelines § 4B1.2(a) state that,

> "The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year that…(2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

Thus, Ryan's conviction for larceny of the person counts towards his Career Offender status.

---

[1] U.S.S.G. § 4B1.2(1) states that "The Sentencing Commission has defined a crime of violence as a federal or state offense punishable by imprisonment for more than one year that: (i) has as an element the use, attempted use, or threatened use of physical force against the person of another."

Ryan's conviction for Breaking and Entering with the intent to commit Larceny also counts towards his Career Offender Status. The First Circuit Court has stated that, "burglary of a commercial building poses a potential for episodic violence so substantial as to bring such burglaries within the violent felony/crime of violence ambit." United States v. Fiore, 983 F.2d 1 at 4. Further, the Supreme Court "has observed that commercial burglaries often 'pose a far greater risk of harm' than burglaries of dwelling places." 983 F.2d 1 at 4, citing Taylor v. U.S., 495 U.S. 575, 594 (1990). The Court in Fiore held that the defendant's "conviction of conspiracy to commit breaking and entering of a commercial structure comprises a crime of violence under the career offender guidelines." 983 F.2d at 4. If the crime of conspiracy to commit breaking and entering is sufficient to satisfy the violent crime requirement under the Sentencing Guidelines, it is easily deduced that the more severe crime of breaking and entering with the intent to commit larceny be sufficient as well.[2]

Ryan also alleges that he was denied his right to effective assistance of counsel because Attorneys Fitzgerald and Juel failed to raise the issue of the incorrect PSR. This allegation fails based on the application of the Strickland test. 446 U.S. 668. Strickland requires that Ryan demonstrates that this ineffective assistance prejudiced his defense. 446 U.S. 668. If counsel had in fact drawn attention to the error in the PSR, the Government certainly would have pointed out the other predicate crimes that satisfy the Career Offender Provisions as it is doing in this brief. Ultimately, Ryan would still receive the same Career Offender status, and subsequently the same sentence. Because

[2] Ryan may claim that there were no violent acts in his commission of the crime, and that therefore he is excluded from this general rule. This defense is invalid, however, because the court in De Jesus stated that "rather than examining the actual circumstance underlying the earlier conviction, we examine only the statutory formulation of the crime charged (here, larceny from the person) to see if that crime is a crime of violence for purposes of the career offender guidelines." De Jesus, 984 F.2d at 23.

Ryan fails to demonstrate that he suffers prejudice due to counsel's actions, he fails to successfully demonstrate ineffective assistance of counsel.

## CONCLUSION

For the foregoing reasons, Ryan's Section 2255 petition should be denied.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ DULCE DONOVAN
DULCE DONOVAN
Civil Chief
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
Tel: (401)709-5000
Fax: (401)709-5001
dulce.donovan@usdoj.gov

**CERTIFICATION**

I hereby certify that on the 20th day of June, 2007 I caused a copy of the foregoing Government's Response to Petition to Vacate Set Aside or Correct Sentence Pursuant to 28 U.S.C. Section 2255 to be electronically filed with the Court and is available for downloading and viewing, and also forwarded, by postage prepaid mail, to:

Robert Ryan
Reg. No. 03809-070
USP Beaumont
P.O. Box 26030
Beaumont, TX 77720

/s/ DULCE DONOVAN
DULCE DONOVAN
Civil Chief
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
Tel: (401)709-5000
Fax: (401)709-5001
dulce.donovan@usdoj.gov